RALPH D'OENCH CO. v. WOODS.
No. 13726.

United States Court of Appeals
Eighth Circuit.
Nov. 16, 1948.

John W. Giesecke, of St. Louis, Mo., for appellant.

Nathan Siegel, Sp. Litigation Atty., Office of the Housing Expediter, of Washington, D. C. (Ed Dupree, Gen. Counsel, Hugo V. Prucha, Asst. Gen. Counsel, and Isadore A. Honig, Sp. Litigation Atty., all of Washington, D. C., on the brief), for appellee.

Before THOMAS, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

In an action by the Price Administrator, Office of Price Administration, against appellant, under section 205(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(a), the District Court entered an injunction requiring appellant to file a registration statement, under the Rent Regulation for Housing, 8 F.R. 7322, with the Area Rent Director of the St. Louis Defense-Rental Area, 7 F.R. 3195, on a certain apartment accommodation, located in St. Louis, Mo., showing "the correct rent charged and collected therefor, as a fully furnished apartment upon the date it was first rented as fully furnished."

The apartment previously had been registered with the Area Rent Director as an unfurnished apartment, having a rental of $55 per month, and it is appellant's contention that it never was offered or rented as a furnished apartment and that the trial court's finding that it had been is not warranted by the evidence.

The record contains testimony by a witness named Witkin that when he sought to rent the apartment from one of appellant's office employees in September, 1944, "I was told that I would have to take it furnished", on the basis of $55 per month for the apartment and $30 per month for the furniture. He further stated that he took the apartment without even having seen it; that he would have preferred the accommodation unfurnished, because he had furniture of his own in storage in New York; that appellant's employee told him, however, that "the apartment had to be taken as furnished", and he took the accommodation as offered, in view of the fact that he was "in bad need" of a place to live; that at the end of a year he tried to "give up" the furniture, but "they (appellant) refused to take it and sent me a letter to that effect, that they refused it"; that at the time of the trial he still was paying $55 per month for the apartment and $30 per month for the furniture; and that his rental payments ordinarily were made by a check each month, to appellant's order, in the sum of $85.

On cross-examination, appellant confronted Witkin with a "Furniture Rental Agreement", dated approximately two weeks after the rental transaction, running between appellant as agent for Lindell Mortgage Company and Witkin. Witkin testified that to the best of his knowledge he had never seen the instrument before, but that apparently, from the handwriting, it had been signed in his name by his wife, while he was out on the road, and that in all probability they had a copy at home. In any event, he said, "I didn't know anybody else (than appellant) was the owner of the furniture." Manifestly, from its date, the furniture lease had been drawn up and its signing requested by appellant subsequent to the renting negotiations and Witkin's down-payment of rent.

Appellant's employee, whom the Price Administrator also called as a witness, stated that she no longer was in appellant's employ and only "vaguely" remembered her conversation with Witkin, but that "It is not true that I wouldn't let him have the apartment unless he rented the furniture." The president of appellant corporation, whom the Price Administrator likewise put on the stand, testified that appellant and Lindell Mortgage Co. were separate corporations but they used the same offices and the witness was an officer of both; that the Mortgage Co. was the owner and lessor of the furniture but had no interest in the apartment accommodation, and appellant was fiscal and managing agent for the Mortgage Co.; and that appellant had simply made furniture leases for the Mortgage Co.

whenever appellant rented an apartment to a tenant "who did not own his own furniture but desired to obtain furniture on a rental basis."

■■ On Witkin's testimony, which the trial court credited, it could not be said that there was no basis for finding that the apartment had been offered and rented as a furnished accommodation. By this evidence, the apartment was rented to Witkin with furnishings provided for it, and Witkin was told that he could not have the apartment on any other basis or condition. The fact that a certain amount was designated as rent for the apartment and a certain amount as rent for the furniture would no less make the aggregate a charge for a furnished apartment, within the purview of the Rent Regulation for Housing, since, according to Witkin, appellant refused to let him have the apartment without the furniture. And the fact that the furniture was owned by a third party would not enable appellant to avoid registering the apartment as a furnished-apartment rental, where they were being rented in required combination. Certainly, a party with the rental control of an apartment, who refuses to rent it out unless the tenant also rents the furniture it contains, is renting a furnished apartment, no matter who is the owner of what.

■ Appellant's brief says that it is "preposterous to rule that an apartment rented by A to B in which B installs furniture he has voluntarily rented from an outside source has been rented as a fully furnished apartment." That may be abstractly granted, and no such general ruling is contained in the trial court's findings and conclusions, nor is it being made here. Witkin, as we have said, testified that he had been required to take the apartment with the furnishings which appellant provided.

Appellant further argues that on the facts shown the action could only be predicated on the theory of an evasion of the Regulation by a "tying agreement", and that the trial court made no such finding by which the judgment could be supported, nor would the evidence have permitted of any such finding. Section 9 of the Rent Regulation for Housing makes provision against any direct or indirect evasion of the Regulation by the disguising of a rental transaction through legal form, "or by tying agreement, or otherwise." But it was not necessary to the exercise of the court's power to compel a rental registration to make a finding that there had been an attempted evasion of the Regulation or that any attempted evasion was of a particular type or nomenclature. It was sufficient to sustain the judgment that the court found as an ultimate fact, on sufficient evidence, that the apartment had in fact been offered or rented as a furnished apartment and that appellant had failed and refused to register its rental as such.

Tighe E. Woods, Housing Expediter, Office of the Housing Expediter, has made a motion here to be substituted as appellee, for Paul A. Porter, Price Administrator, Office of Price Administration. Since the judgment was entered in the District Court, and while the motion for a new trial had been pending, the Temporary Controls Administrator, Office of Temporary Controls, was by Executive Order 9809, 50 U.S.C.A. Appendix, § 601 note, 11 F.R. 14281, dated December 12, 1946, vested with all of the functions of the Price Administrator, Office of Price Administration, with full power to continue and maintain in his name all civil proceedings previously instituted, maintained, or defended by the Price Administrator. Thereafter, on April 23, 1947, by Executive Order 9841, 50 U.S.C.A.Appendix, § 601 note, 12 F.R. 2645, Frank R. Creedon, as Housing Expediter, was invested with all of the functions and powers with respect to rent control theretofore vested in the Temporary Controls Administrator, Office of Temporary Controls, with full power to continue and maintain in his name all civil proceedings with respect to rent control theretofore instituted, maintained or defended by the Price Administrator. On November 1, 1947, by Presidential Order, 12 F.R. 7265, after the resignation of Frank R. Creedon, as Housing Expediter, Tighe E. Woods was appointed Acting Housing Expediter, and was invested with all of the functions and powers previously exercised by the Housing Expediter; and on April 30, 1948, his ap-

pointment as Housing Expediter, Office of the Housing Expediter, was confirmed by the Senate, and he has ever since served in that capacity.

At the time the motion for a new trial was overruled, and at the time appellant took this appeal, Tighe E. Woods was Acting Housing Expediter, and as such was successor to the functions and powers with respect to rent control originally vested in the Price Administrator and thereafter in the Temporary Controls Administrator, including the right to continue and maintain in his name all civil proceedings with respect to rent control theretofore instituted, maintained or defended by the Price Administrator. No attempt has been previously made by the Temporary Controls Administrator or by the Housing Expediter to be substituted as a party in the present suit for the Price Administrator. And in filing its notice of appeal and in the perfecting of the appeal, appellant has not made any attempt to have such substitution made.

Appellant now opposes the motion of the Housing Expediter to be substituted as a party, on the ground that under Federal Rules of Civil Procedure, rule 25(d), 28 U.S.C.A., the motion comes too late. But we have held in Fleming v. Goodwin, 8 Cir., 165 F.2d 334, certiorari denied Goodwin v. United States, 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. ——, that the six-months limitation in this rule has application only to actions which are of such a nature that they would abate upon the separation of the officer involved from his office; that an action brought by the Price Administrator under section 205 of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925, is in effect a suit by the United States itself and the use of the Price Administrator's name is a mere formality, so that such an action does not necessarily terminate on the separation from office of the person vested with its powers and functions at any particular time; and that rule 25(d) therefore does not prevent the substitution of a successor for a previous Price Administrator being made more than 6 months after his separation from office. The substitution in his official capacity of the per-

son holding the office of Temporary Controls Administrator or of Housing Expediter, for the abolished office of Price Administrator would, of course, in view of the Executive Orders referred to above, be no different in character and effect than the substitution of a succeeding Price Administrator for a predecessor. Cf. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 119, 67 S.Ct. 1129, 1133, 91 L.Ed. 1375. What we have said in the Goodwin case as to the non-abatement of an action by the Price Administrator for treble damages is equally applicable to an action, such as here, for an injunction to prevent further violation of continued rent controls. It may be added that if the present action had been abated, appellant would hardly have had the right to take or be heard on this appeal, unless it itself had sought to effect a substitution.

The motion for leave to substitute the Housing Expediter as appellee is granted, and the judgment is affirmed.